The Honorable The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's case will be called as previously announced and the times will be as allotted to counsel. The case today is United States v. Emiliano Emanuel Flores-Gonzalez, appeal number 19-2204. Attorney Lerman, please introduce yourself for the record and proceed with your argument. Good morning, I'm Kevin Lerman on behalf of Emiliano Flores-Gonzalez. May I reserve five minutes for rebuttal? Uh, you may. May it please the Court. The District Court erred by indiscriminately increasing Emiliano Flores' sentence based on the Court's belief that Mr. Flores was living amongst a Puerto Rico society that is more dangerous than society in the mainland United States. The Court's skyrocketed sentence is inadequately explained under applicable precedent. Nothing in Kimbrough allows such a practice and there's no basis to overrule the decades of case law that the Department of Justice takes aim at now. Finally, the type of analysis the Court engaged in is extremely problematic. As Amiki explained in uncontested briefing, the notion of targeting high-climb areas stands to harm communities of color, not just in Puerto Rico, but in Massachusetts, New Hampshire, Rhode Island, and Maine. This Court should make clear that sentencing courts must not engage in practices that stand to disparately impact minority communities, which in turn would undermine respect for the law and undermines the fundamental notion that people be punished for what they do, not for where they are from. So, Mr. Lerman, is there any doubt that the murder rate in Puerto Rico is four times what it is in the U.S. on average? On average, there wouldn't be doubt on that number, but that number wouldn't be an adequate measure whatsoever to compare jurisdictions against one another. And the Department of Justice's own caveats come with the warning not against comparison between jurisdictions based on confounding factors that are overwhelmingly at work here, based on population density, based on economic status. Those factors tend to correlate. It's a highly complex issue of why firearm injuries result in death in certain areas at higher rates than in other areas. And I would note also, we're extremely far from a situation that has to do with violence whatsoever. This case is in a fundamentally different place than cases where the Court has actually looked to violent conduct to compare the need for deterrence against violent conduct. This is a public order offense that doesn't involve violence in any way beyond the ordinary ownership of a firearm in a legal manner would involve violence. So driving around with a loaded machine gun in the front seat of your car doesn't pose any risk of harm to the public? It doesn't per se, Your Honor. And I think driving around warrants fleshing out, because this was a situation where a young man... This is a dangerous and illegal gun. There's no denying that. That's why he pleaded guilty. It's not legal to have unless it's been manufactured prior to 1986. So driving around with that dangerous gun does pose a threat to the public? Does it pose a threat outside of the threat already called for in the guidelines? We don't believe that it does. This guideline has been around for decades, and it takes into account ordinary activities. This was not a drive-by. This was somebody going through a drive-through, and there's no evidence in the record whatsoever of some sort of nefarious use of this firearm. He was in a private car, and there wasn't actually any conduct that was violent. Mr. Lerman, do we have any sense of what the mine run case is in the eyes of the Commission? In other words, there's the average statistics for gun violence, but that's a national average. But the language is the mine run case, and I guess I'm just trying to figure out if we have a sense of... When the Commission sets the guideline for the mine run case, do we have any sense of what that case is and how we should think about what that case is? I think we should think of that case in terms of what sort of parameters the Commission has set for conduct-based gun offenses. We have the Commission placing those in Subsection K of Chapter 2 as public conduct offenses, and there is a cross-reference to Chapter 2A, which are offenses against the person. So there's a pretty significant distinction between a gun that's involved in a violent crime and a gun that's per se unlawful to own. The actual place of where one is possessed, I think generally, the heartland of an offense has to be pretty broad, because a firearm is a highly movable object. It's something that can go from one place to another. And the Commission has been concerned with, obviously, avoiding unwarranted disparity. And so the happenstance of one person being in one area at one time when something could change... In relation to that, what do you think the significance is that the way the guidelines function is to establish a range rather than a specific point? I think that that's for giving some general leeway for individual circumstances and to capture generally... It just seems to me somewhat strange to assume that the Commission doesn't have that in mind in setting a guideline range, which you can work within, because the premise of the variance is that somehow the guideline is only imagining what the range should be in a place in which there's an average amount of gun violence. I don't know why we would start with that assumption. If I may, I do not start with that assumption, so that's a separate matter. Could I just get Mr. Lehrman's reaction to that before? Yes, and then I have some questions as well. Yes, so I think that my reaction to that is, and this was addressed in one of the AMIGI briefs, the brief that's by the MacArthur Justice Center and the ACLU. The guideline, this is actually one of the guidelines, unlike the crack cocaine guideline that's addressed in Kimbrough, that is based on an empirical set of cases. There is evidence that the Commission saw a variation in sentences in firearms based on actual use in individual cases. At the time that Congress is passing the law in 1986 that criminalized ownership of some automatic guns, there were overwhelmingly, and we briefed this in other cases, there was an overwhelming trend of firearm possession offenses occurring in very populous areas. So I think that there's not a particular reason. There's particular dangers in rural areas which are different. There's much higher rates of accidental gun deaths and gun injuries and self-harm in areas that have less dense populations. But I think that there's significant evidence, which we didn't get into because the court statements here came up after the hearing, after the pre-sentence report, after the party's presentation of their positions. So there wasn't any opportunity to develop that. But I think that there's pretty significant evidence in the record of the Commission and in Congress that it was taken into account, really the dangers of having a firearm, an unlawful firearm, in a very populous area. Judge Litt. I believe that Judge Kayada has properly established that having a machine gun within easy reach as you are in a public place like driving through McDonald's does pose a threat to the public. You admitted that, but then you responded, this is only a status crime and there was no indication of any risk on these facts of his using such a firearm. However, I believe the facts show exactly the contrary. He was picked up on two different arrest warrants, unlike many of our other cases. One of them was a domestic violence arrest warrant, and there is a well-known association between murders of domestic violence victims and possession of lethal firearms. And this one is more lethal than others. Congress expressly recognized that relationship in later statutes. Secondly, he was picked up on a weapons charge. Thirdly, he had, in fact, used the gun. There was a discharged round of ammunition in the back seat. The district court goes on to say that he was unemployed. He had no apparent means of purchasing this weapon. He had admitted to being a constant marijuana user, which certainly would affect his judgment, and that most of these guns come from the black market. So unlike Rivera Barrios, where the guy is just picked up because he's a friend, here there is a large basis in the record to assume for the district court to conclude this is not merely a status crime, that there are plenty of indicia that he intends to use this weapon. And given that combination and the need for deterrence of murders, it would seem to me that this case involves adequate explanation. And under Rivera Barrios, we can look at the full record and look at the things that go beyond what the district court actually articulated. So in fairness, that's my view of what the record shows. Is there anything that you dispute out of that? I do, Judge Lynch, and I think I have about four points to make. The first one is that what happened here was the court—the points that Your Honor makes were not the focus of the court. The court described this case as not warranting any special treatment, that there was nothing particular about this case. I'm sorry, the court in fact mentioned almost all of the factors that I mentioned. The court's focus was about the impact of this type, this particular—and I'm looking at page 28 of the transcript—the impact, 28 of the appendix, the impact of this particular offense. So you're saying we should ignore certain things that the district court articulated and instead adopt a focus rule where the court of appeals becomes the sentencing court? Not at all. The court—the sentencing court—the sentencing court's focus was precisely what this court warned against in Narvaez Soto, that if the driving force of the sentencing court's rationale are community characteristics, then the court's insufficiently focused on the individual circumstances. And if we look at, for example, what Your Honor mentioned about domestic violence, if the court had based its sentence on dismissed charges that weren't supported with any indicia of reliability, then we're in the territory of Marero Perez, and that would be error for a separate reason. So the record doesn't support those assumptions, and I think it's proper that the court didn't rely on them because then we would have been in either Marero Perez or we also had Torres Melendez, which was recently reversed for that reason because there was unreliable criminal history used to assert that somebody had some propensity for violence. There's not any evidence here of propensity for violence, and assuming that there's one based on what other people in the community are likely to do, the court's overwhelming focus was not about this young man who had no convictions, he was 19 years old, and the gun would have been lawful had it not had this modification. In Rivera Barrios, there were two defendants, one of whom had an arrest warrant, the other of whom was, by his telling of it, merely there because he was a friend. This court found that there was a significant difference between the two. The arrest warrant did show propensity. Being there simply with a friend did not. I don't have that portion of the record in front of me, but I don't think that for an individualized sentence, that looking at the case on appeal, that an arrest warrant at the time that resulted in a fully dismissed... You're arguing a different point than the point I'm trying to make. If we have to consider all of the circumstances and the judge's concern about deterrence and propensity, this record is different than the other records. I'm sorry. I've occupied a great deal of your time, and I will cease doing that for now. Let me ask... Let me put my hand down. Okay. Mr. Levin, let me ask you, I have the guidelines 2K1... 2K2.1 before me, and I don't see anywhere in the guidelines... I've read this guideline hundreds of times in the past, but I don't see anything that takes into factor if there's additional rounds of ammunition or what the actual ammunition is. Here we have a machine gun. It's loaded with 33 rounds of ammunition. There's also a second magazine with 30 rounds of ammunition, and then there's also a spent casing, which means, from a sentencing perspective, it's not beyond reason. It's logical to assume that he used it somewhere. He tried the machine gun somewhere. So isn't that something that can be considered beyond the guidelines? In the old days, when the guidelines were mandatory, I believe this could even be considered perhaps for the departure. And we have plenty of case law where the number of rounds of ammunition also is considered. So what's your take on that? Well, starting with the ammunition, there wasn't a legal... there wasn't any legal prohibition on Mr. Flores from owning ammunition. So that wouldn't be any aggravating factor, and this court has said repeatedly now... Well, ammunition is illegal. If he doesn't have a license, he can't be owning ammunition. That's a federal crime also. If he doesn't... I don't think that a person needs to have a license to have ammunition federally, but I... But he doesn't have a license because it's illegal. He doesn't even have a state license, so... If this were a state crime, I could see that being relevant here. But this court in Rio de Berrios, and I think it was correct to say that it's pretty typical that someone who has a firearm would also have ammunition. There are places in the guidelines that deal with high amounts of ammunition in the hundreds of rounds. Not this guideline, though. So my short answer is that I think that Rio de Berrios and Garcia Perez and those cases, I think it's typical, especially if this firearm is considered per se dangerous, even if somebody's not engaged in violence. Excuse me. Even if someone's not engaged in violence, that's why it's a public safety crime. So, especially if an automatic weapon, and this... I don't think that this is what Congress was thinking about in the 1980s in terms of... About five minutes remaining. About five minutes remaining. When you say this is a public safety crime... Go ahead, Judge Scott and then Judge Thompson. When you say this is a public safety crime, isn't one of the purposes of sentencing to protect the public? And wouldn't it therefore be rational to calibrate the sentence itself to the public's need for protection? So that as the public's need for protection increases, it's rational to decide that the sentence should perhaps increase to add further deterrence. What's wrong with that thinking? As a general proposition, and as a factual inquiry, we don't have a problem with that. But that wasn't the factual inquiry, and that wasn't explored here. And I don't think that this court has taken this type of script that was at play by the sentencing court at face value. We see in cases like Narvaez Soto and Santiago Rivera where there actually was a crime of violence involved, where this court has really not accepted what the court referred to and said, well, maybe the sentencing judge had underestimated the level of violent crime elsewhere. And that's something that's been presented here statistically, that Puerto Rico is not an outlier in any sense of measurable violent crime. We don't think that exploring statistics at this stage is warranted because the sentence below was unexplained and because this was introduced after the sentencing hearing was essentially finished, after the Rule 32 fact-settling process was resolved, and there wasn't any opportunity to explore it. I think if this were a crime of violence and the court were attempting to deter crimes of violence that were present to some unusual extent, we'd be in a very different situation, and we might be in a situation like the Narvaez Soto case or even in the Garcia Mojica case. So my colleagues have advanced justifications that, in my humble opinion, simply were not advanced by the court below. Specifically, the court said that it was not purporting to establish that defendant's crime was more harmful than others similar to his, which I take to mean that there was no reason to believe that it fell out of the heartland of the sentencing guidelines. How do you respond to that? We agree that that's correct, and that's been the procedural error that's been the common thread that's been addressed throughout this case. It's a failure to explain the court's sentence, and that actually relates to the final point that I was hoping to discuss, in that this court's last 16 years of precedent with Zapata-Garcia, which we believe anticipated gall that a sentence that is unusually lenient or unusually harsh should have a sufficient justification, and that that justification increases the farther you get from the prototypical case. And that's not something that would be increased by what the court pointed to, and I don't think it's something that can be filled in on appeal when it wasn't developed below. Mr. Lim, let me just try and get a sense of what rule you actually want us to adopt and then how it applies in this case. So just a couple questions. One, suppose this was a trafficking offense. Would the incidence of gun violence in Puerto Rico then potentially be relevant to the determination of whether there could be a variance? Generally speaking, I think they would be, but of course every case has to be individualized, and the strength of a particular guideline, we would have to study that particular guideline, and I think a court should give notice if it thought that the guideline was inappropriate. But I take it your position is that with respect to just a pure possession case, then the relevance of the high violent crime rate in Puerto Rico is too attenuated to provide the justification, even if it might have been a trafficking case. Is that the idea? Yes, and I think it has to be, especially given what we've seen here where simple gun ownership is remarkably common. Let me just ask a third question. Suppose we had statistics about machine gun possession in Puerto Rico, which I take it we don't have, and that that crime itself was particularly prevalent in Puerto Rico relative to other places. Would that then be a permissible basis for increasing the sentence for a machine gun possession offense? It's pretty, and I'm not trying to avoid the question, it's pretty hard to speak in abstractions, but then you would at least be closer to what Judge Celia referred to in, I'm sorry. That's time. So in what Judge Celia referred to as the ability to use the crime rate of a particular crime. So I think if it relates to the crime, then you would at least be somewhat within what the court has discussed so far and not talking about some other type of crime. Okay, I know you reserved five minutes, but I think Judge Halpy has a question, and I want Judge Monaco to call, but if you want to ask a question, I'll give you an opportunity to do so. Judge Halpy. Yeah, Mr. Lerman, this is a matter that came up in your supplemental and bond reply brief, and also in the ERCDL's amicus brief, but you both make reference to the insular cases, and you seem to suggest that the Article III judges in Puerto Rico are upwardly varying based on racial and ethnic considerations. I'd like for you to say anything you have to say about that or clarify that position. Is that happening in your view? Yes, Your Honor. What I'd like to say about that is when it comes to sentencing, even the appearance of a sentence based on an improper factor can make the sentence unreasonable. That's what this court recently did in the end of 2021 in the Guzman case. Even though there was a downward variance, this court, on appeal, couldn't tell whether the variance was based on national origin or some other factor. One of the things that we presented in the case of concern is that a specific sentencing enhancement, a sort of weaponization of Kimbrough against people residing in Puerto Rico, which is an ethnically distinct and distinct in many other ways region of the United States, would raise the concern of a neutral observer that the law was being applied disparately, which was the concern in Kimbrough. Let me then ask you just a quick follow-up. What if this sentence were to take place in a predominantly white, high-crime area, mainly in the United States, and the judge were to do exactly the same thing? Would you be still making the same argument? I think that the circumstances, if history were rewritten in another way and that people were using high-crime neighborhood rationales as a proxy to discriminate, if white Americans were the minority and high crime was used as a proxy to target those communities, then yes, but in this case, the proxy is being used against black and Latino communities and the proxy in this case appears. And I'm not saying, I don't believe that any judge in the District of Puerto Rico is being racist. I think it's completely the opposite. There's a valid concern that's at work, but just like in Kimbrough, there was no intentional racism, but it undermined respect for the law to have a law that applies disproportionately and seemingly arbitrarily against people of one race or people of color generally. Judge Wattacava? I did want to just circle back to where we started, I think, which is, and to ask you again this question, does a Heartland possession of a machine gun case take into account or consider the public conduct intertwined with that crime itself? So the fact that in this particular case, the machine gun was under a seat in a car, in the passenger seat of a car, is that a fact that the sentencing commission or that the benchmarks took into consideration when they were deciding on the Heartland case here? Judge Wattacava, I think that that's a difficult question to answer because it's a relatively broad inquiry as what the Heartland accounts for. I will say that this is an extremely high guideline range, and I think it took into account a lot of ordinary variations. People are commonly in cars, people are commonly in homes. In Puerto Rico, most people travel in cars. There's not a lot of public transit, so if you're going from one place to another, anyone who buys a firearm is going to then drive the firearm home to where they are. And if it's an illegal one, which it was in this case, it would be transported in a car just like a legal one. So I think transporting, there's no— and I think it's challenging to have an inquiry as to just to search for things that take something out of the Heartland. I think when we look at Gaul and we look at Rita and we look at Kimbrough, we have a sense that the commission has this institutional strength, and then the court applying the 3553A factors to the specific nature and circumstances of the offense, I think that has to be reasonable and it has to be something significant and not arbitrary, otherwise you have a problem with the sentence actually being individualist. Thank you. Can I ask one very quick question? This is not a case where a firearm is—it has to be transported. Let's take that for granted. But it's not a case kept in a safety box inside the trunk with the ammunition. It's in the passenger seat out there in the open. So anything you want to respond to that? Yes, the response is that those considerations should be fleshed out in the fact-finding and fact-settling process, in the pre-sentence report, in objections to those. Rule 32 allows for objections for something not being included, and if the court is going to rely on some factual predicate that's not part of any factual development of the parties, then that should be raised sooner so that we could have then developed facts related to that. So I think that that's a consideration generally, but not specifically a reason to skyrocket the sentence here to a four-year sentence from a two- to two-and-a-half-year range. Thank you, Mr. Lerman. Thank you. At this time, Mr. Lerman, please mute your audio and video, and at this time, Attorney Pelletier, if you could please introduce yourself on the record to begin. Thank you, Your Honors. John Pelletier from the Department of Justice, and may it please the Court. The federal sentencing statutes and the Supreme Court precedent establish a settled framework for sentencing in federal cases. A court has to consider all of the relevant 3553A factors, but then the court has broad discretion to weigh those factors and impose a sentence either within or outside the advisory guidelines range. The district court cannot treat the guidelines range as presumptively reasonable, and it does not have to find that extraordinary circumstances are required to vary from the advisory guidelines range. With that background of the settled framework, this Court, panels of this Court, have latched on to two procedural rules that are inconsistent with that framework. The first is that in order to vary based on a 3553A consideration already accounted for by the guidelines, a court must, quote, articulate specifically the reasons why the defense in the situation is different from the ordinary situation covered by the guidelines, and this Court has called that the issue. Why is that incorrect? Because... We latched on to something improperly. Why would that be improper? Because it treats the guidelines range as presumptively reasonable, Your Honor. A district court... No, it doesn't. It just says that if you're going to vary, we need to know why you're varying. Your Honor, it says that... Excuse me. Excuse me. I mean, for instance, if the court thinks that there's a high incidence of pedophilia in Puerto Rico and that children are murdered with machine guns, that may be true. It may not be true. But at least if we have an explanation, we know what the court is doing. Yes, Your Honor. Here the court specifically explained that the factor that it was taking into consideration that was already factored into the gui... or that this court has concluded was already factored into the guidelines are the dangers of machine guns. And the court said, I'm giving greater weight to the dangers of machine guns in this case. But this court has said a court cannot give extra weight to the dangers of machine guns unless it shows that there's something about the case that's outside the ordinary case. In other words, that's another way of saying that it has to be extraordinary. What do you make of this language from Gall, which it says, we have to take account of the deviation in the variant and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. That's from Gall. Yes, and that's the court's review for substantive and reasonable initial argument. This is a procedural rule. The line between what's substantive and what's procedural. Are you saying that as long as we then say, if we did it under substantive review, then you would have to give a more substantial explanation? Well, when you're reviewing for substantive reasonableness, you need to look at the district court's explanation, all of the factors in the case. The explanation here was that, as Judge Thompson said, he says, I read the district court's opinion. Maybe this is subject to debate, but let's assume for purpose of this question. District court said there's no basis for treating this case as any different than any other similar type of case. Nonetheless, I'm going to vary because of the incidence in crime in Puerto Rico. So is that a sufficiently compelling justification? And what's wrong with saying that, you know, that's our question, is that good enough, given the particular offense, which is said to be similar, and the incidence of violent crime that's said to be the justification for a significant departure? We understand what the court to be saying in that excerpt that your Honor referenced to say that he was relying on two factors in particular to vary upward. He gave weight to all the factors in the case, and we understand that he was saying that... I understand that there's two different things that are going on. There's the question of what's the rule, and there's the question of maybe what we should do in this particular case. I had understood you to be saying, even if we read the district court, as I just described it, to have done nothing more than say, this is a mine run case, but it should be higher in all respects other than the fact that it occurred in a high crime area. And because Puerto Rico has a high incidence of violent crime, that alone is a reason to deviate. You are defending that position, aren't you? Well, I think I would just maybe qualify the notion of the mine run case that your Honor mentioned. We don't think that the court said it is a mine run case, because we think that the characteristics, the gun violence, the prevalence of gun violence... Yes, no, I understand, but to say for that... Yes. There's two different things. There's some question as to whether the district court thought even apart from that, maybe there were special features, the spent casing, the number of rounds, the prior history of the defendant that caused concern. All of that might be one ground on which the variance could have been justified. But I thought you were also making the argument, and primarily making the argument, that even if we read the district court not to have premised the variance on anything other than the high incidence of crime in Puerto Rico where the fence occurred, that alone is a justification for a variance of this magnitude. Is that right, that that's the government's position? Our argument is that procedurally, a district court is permitted to vary upward from the guidelines range based on both, number one, the prevalence of crime in the community, and number two, the dangers of machine guns. Yes, so it's permissible to vary from the guidelines. Then, once you eliminate that procedural barrier that this court has adopted in Rivera-Barrios and other cases, then you get into substantive reasonableness. And what if the district court, the only explanation the district court has given for a sentence of that magnitude is the high incidence of crime? Are you saying that's substantively reasonable? Yes, in this case, the sentence is substantively reasonable because there are many, many factors that push this up to the, certainly to the top of the guidelines range. No, no, that the district court gave. Yes, well, the district court gave two factors that it emphasized for going above the guidelines range, but it also took into account many other factors as relevant 3553A factors. And when this court reviews for substantive reasonableness... I'm just not getting a straight answer from you. Okay. As far as I can tell, you're not being straight with me, but I'm having trouble following. I guess I'm trying to figure out, is the government's position that if the district court in this case took the view that this was no different than any other machine gun case, possession case, other than the fact that it occurred in Puerto Rico, which has high crime. Therefore, I'm very upward for that reason alone. Is the government defending a sentence on that basis or not? We do not, yes. We do not think that the district court abused its discretion under the extremely deferential substantive reasonableness review that applies to district court. Even if what we understand the district court to have done is what I just described? Yes, because the court is entitled to give weight to the dangers of machine guns and the prevalence of crime in Puerto Rico. Going back to Judge Thompson's question, you seem to, I thought, be saying that in assessing the question of whether the variance can be based on the high incidence of crime in the district alone, you would be violating Gaul by requiring an extraordinary justification. I'm trying to figure out how does Gaul's analysis that when you make a significant variation, you have to have a sufficiently compelling justification for it not fit very much with what the language in Flores-Gonzalez said. Well, what I was referring to earlier was the first of the two rules that this court adopted. Number one is the rule that if a factor has been accounted for in the guidelines the dangers of machine guns, the court can't give extra weight to that to vary upward. That is directly inconsistent with Gaul. It's inconsistent with Nelson, which said that the district court cannot treat the guidelines as presumptively unreasonable. Then a second question is how can a court take into account the prevalence of gun violence in the community? That is totally relevant other than 35, 63A factors. Is that a sufficiently compelling justification on its own to be the sole basis for a variance of this magnitude? Number one, it can be the basis for a variance on its own, and we think that that factor plus the danger of machine guns in this case was sufficient to make this sentence substantively reasonable. Just to be clear, the Supreme Court and this court has made clear that when reviewing for substantive reasonableness, there's a broad universe of reasonable sentences in every case. That can include, and it will almost invariably include, sentences that are within the guidelines range and sentences that are above the guidelines range or outside the guidelines range. I think in many cases, it will include sentences that are below, within, and above the guidelines range. It's a very broad universe of cases that could be substantively reasonable in any given case. With this court, it's required... When does the court go too far? We've had the too far language in considering community situations, and we said the court can go too far. What is your understanding of too far? Give me an example of when the court can go too far. When it does not take into account the other 35, 50, 38 factors and only takes into account the prevalence of crime, gun violence in the community, that would run afoul of the requirement that a court take into account... Suppose he was convicted of money laundering, and then the court says, you know, I looked at crime rates. There's general crime rates. They're higher in Puerto Rico, so I'm going to raise it because we need to make people follow the law. Would that be permissible? That would be entitled to, at most, de minimis weight under the 35, 50, 38 factors. Why? Again, this is a discretionary determination. Why would it be? You think it would be too attenuated? Well, I think it's something that a court can... Okay, but would it be enough of a justification for a variance this big? Just high crime... Why? Why would it be? Why is it highly unlikely? But I'm giving you that hypothetical, and I just want the government's view of it. You think it's highly unlikely that that would be sufficient under substantive reasons to justify a high variance? That would be highly unlikely to be able to support a high variance because the weight that should be... Its weight under the 35, 50, 38 factors would be present, but it would probably be negligible. And again, I say probably because the court has to evaluate all of the circumstances in the case and how the court is taking into account that circumstance. So here you're just saying general crime rates are high, and so money laundering, he commits a crime, any crime whatsoever, without saying that this particular crime needs to be deterred or this particular crime would be deterred or this particular crime is prevalent or is irrelevant here. And that's why... Counselor, in this case, what the district courts cited was violent crimes and murders. So two specific categories, one very broad, one more specific. But suppose the court had just said violent crimes. Would that be enough? If the court had just said violent crimes... I mean, again, this needs to be taken into account in the specific circumstance. Here, the court was plainly referring to gun violence. In the whole description of the court's reasoning, the court was talking about the prevalence of gun violence in Puerto Rico. And that is absolutely probative of under 35, 53A in terms of the court's consideration of deterrence, the seriousness of the crime and other factors under 35, 53A. I think that all of these hypotheticals that we're talking about here really demonstrate why appellate courts are not... and why the Supreme Court has held that appellate courts are largely out of the business of getting into a granular determination and assessment of every little fact and factor in every given case. There's a substantial determination... But you just want us to take the position that if it's not unconstitutional and not a violation of a federal law, as might be suggested in Concepcion, that we don't have any appellate review? Not under procedural reason, Your Honor, no. But under... There's always the backstop of substantive unreasonableness. But again, that is also a very deferential standard. And the court, in that case, just has to determine whether the sentence that's imposed is plausible and defensible. Here, for any number of reasons, the sentence here is plausible and defensible. The defendant here possessed a highly dangerous weapon, a machine gun, that was made... Its reason for existing is inflicting mass violence in a very short period of time. It had 30 rounds of ammunition in it. He had another 30 rounds of ammunition in a high-volume magazine also with him. He was driving... He was in the passenger seat with ready access to that gun. He wasn't driving and therefore could not access it. It was right in front of him in a bag. And there was a spent casing in the background. And he was out in public with a firearm that's meant to inflict very high casualties and violence in a community that the district court reasonably concluded is plagued by gun violence. The sentence here was amply supported under a substantive reasonableness standard under the holiday death penalty. Counsel, let me ask you. If the panel opinion stands and that's the rule of the circuit, what's your view... Let's assume that the district judge in Puerto Rico in gun crimes or any other type of crime start considering some community factor for downward variances. The result would be... Would the result be that then downward variances will also be, you know, analogously be very rare. You can't go upwards but you can't go downwards also. Would that also preclude, you know, courts from considering downward factors as well? I think that the rule that this court has adopted in Rivera Variance and Otherwise would constrain courts from varying downward. The discretionary rule that we believe is compelled by the sentencing statutes and Supreme Court precedent would permit district courts to take into account community factors or anything else as relevant under 3553A to vary downward or upward. A court could readily take into account the characteristics of the community to vary downward and that would be a permissible exercise of its discretion under the procedural rules that are permissible. Again, there's always the backdrop of substantive unreasonableness review but again, that's highly deferential and there's a wide universe of sentences that in any given case will be reasonable. How do you define community and how do we get empirically at the characteristics of the community? Well, I don't define community in any given way. It's how a court defines community in terms of assessing its relevance under 3553A factor. Here, the district court defined the community as Puerto Rico which was reasonable given the heightened murder rates in Puerto Rico not only in San Juan but elsewhere. Why is that a relevant geographic unit to this defendant? Well, the defendant was in Puerto Rico in a community where the court reasonably concluded that gun violence was prevalent. But the defendant said that coastal communities in the United States? If there's a 3553A factor that corresponds to coastal communities the court can take it into account, yes. Well, do you think there is? That's a community. In other words, this person is not all over Puerto Rico. So why is that the relevant unit? This crime occurred in Puerto Rico where the district court reasonably concluded that gun violence is prevalent based on statistics for Puerto Rico. And that was the... No, the court didn't say that. The court didn't say based on statistics for Puerto Rico. Yes, the court said that the number of murders in Puerto Rico was taking into account the murder rate in Puerto Rico, Your Honor. And the court said for this type of weapon crime the community that the court takes into consideration is the entire island of Puerto Rico because weapon crimes are not limited to one particular area or region of the Commonwealth. That was the district court's rationale and reasoning. We think it's... Now, I want to be clear that the defendant never objected to any kind of factual finding both at the district court or on appeal before the panel. So I think what this court really has to do is accept those factual findings and then conclude that based on those factual findings was the court procedurally foreclosed from taking into account those facts when determining that they're relevant under 3553A and that those facts warrant a heightened sentence in this case. Did the defendant know those... Did he have noticed that those... that the judge was going to rely on some of those statistics? There was no... Various crime rate statistics, for instance. There was no formal notice in the manner of the court saying beforehand providing some sort of formal notice saying I'm going to take into account these statistics at sentencing. But the level of notice here and the notice procedures here are well in line with the notice requirements that this court and the Supreme Court have required. There's only pre... Sorry. Did the court say to or attach any specific studies or published statistics in those findings that we know to rely on? The court only specifically referred her to the murder rate, Your Honor. And it found that the gun violence is unusually prevalent in Puerto Rico. And it was entitled to make that finding which was not challenged, which was not objected to at sentencing or as clearly erroneous in... before the panel based on the murder rate and also based on its cumulative experience with other cases that the court has handled and that this court has handled. This is not a new issue in district courts in Puerto Rico. This court and others have repeatedly been provided with statistics and data and courts have repeatedly concluded that gun violence is prevalent in Puerto Rico. And this court has permitted district courts to reach that factual conclusion based on the available information. And there was no requirement that the district court rehash all of that in this particular sentencing when the court specifically referred to the murder rate. And there was no objection. There was no request for a continuance to provide more information. And that in itself, I think, shows that the defendant was not surprised in any way and he did not have a basis to dispute that finding based on a preponderance. Judge, help me. Yeah, counsel, let me ask you. There is ample case law from this court recognizing the overwhelming violence in the streets of Puerto Rico of murder rates. One example is U.S. v. Navajo Soto from 2014. There's also, in a civil case, the Watchtower opinion. There's several opinions. And that has to do with gated communities in Puerto Rico because of the crime. So this court has repeatedly recognized that high crime rate for both criminal cases and even constitutional civil rights First Amendment cases. So my question to you is, I know in some of the amicus briefs and in the defense supplemental reply brief, Navajo Soto is specifically being challenged. Do you have anything to say to that? Because what the defense said, and I'll read, is because of the impropriety of singling out a defendant for greater punishment based on our committee, such cases that purport to call Puerto Rico's population one thing or another should be relied on extreme caution. So should Navajo Soto continue to have some presidential effect for purpose of these variances, or no? Every defendant, in his or her sentencing, is entitled to make any argument that he or she wishes that's relevant under the 35-53A factors. If the court concludes that gun violence is prevalent and the defendant believes that that finding is unsupported, if they believe that Navajo Soto was somehow misguided, and that all these other cases, all these other judges that have found gun violence are prevalent in Puerto Rico, are erroneous, that individual defendant can put forward whatever information or evidence that he or she wishes to dispute that, and a district court can consider that and then make a finding as to whether they agree, continue to agree, that the conclusion in Navajo Soto, and in this case, is correct or not. There was no request for a continuance in this case. There was no objection to the district court's factual finding. There was no dispute about the finding that gun violence is prevalent. So that's not an issue in this case. But it's certainly not foreclosed in future cases for defendants to... Should defendants, you know, particularly the full defender office handles probably more than half of these weapons, machine gun cases. Should counsel come prepared if they want to challenge community factors to come prepared with statistics and say, court, don't consider that. That's the opposite. I believe they have in the past and it's been rejected. I don't know that there's anything new that they would. And they certainly are permitted to re-litigate that in any case they would wish to. They can provide whatever information. And they have noticed that this is obviously an issue at sentencing in Puerto Rico. And if they wish to on any particular case, they could raise that. If they feel that they are surprised, they can ask for a continuance, which they did not do here. All that is... There's ample discretion and procedures in the district court for a district court to make the... for a defendant to provide whatever information they feel is relevant in the district court to take that into account. That was never raised in this case. We don't think it's really an issue in this case or it can be an issue in this case because, number one, there was no objection at sentencing. Number two, it was never raised before the panel. We think it would be a deviation from party presentation. There's about five minutes left. Five minutes. Judge Carado, did you have a question? Mr. Pelletier, what does the government... What's the government's position? What do you have to say with respect to an argument advanced by some of the amicus parties that allowing district court judges to provide added protection through added deterrence to a community that faces higher risks and, therefore, needs more protection is somehow racist? Well, to be clear, a judge cannot... cannot increase or decrease a defendant's sentence based on that defendant's race, ethnicity, or national origin. But a court can take into account any circumstance or factor that's non-discriminatory and that's relevant under 3553A and decide what way to give that, either as an enhanced or a decreased sentence in any particular case. And, to be clear, a defendant certainly can argue to the district court that a particular factor will unfairly burden a particular community based on race or ethnicity or national origin, and a district court can take that into consideration  that particular factor. It could determine that giving weight to that factor in light of a... in light of a disparate impact would work against promoting respect for the law. But there's no statutory or constitutional rule that forecloses a district judge from taking into account a relevant factor, a non-discriminatory, relevant factor under 3553A without giving any kind of consideration to potential disparate impact. In fact, that's what happened in Kimbrough. A district judge... The district judges... Many district judges concluded that the 101 to crack cocaine ratio had a disparate impact based on race. I'm sorry, Judge. Excuse me. I think we lost Judge Thompson for a second there. Are you back, Judge? Yes, sir. I don't know what happened. You did lose me for a second. Okay, you can continue. And that's what... That was what happened with the 101... Counsel, let me just ask you. In the record below, when Judge Pesosa sentenced the defendant, there was never any objection at that time. Judge, you're relying on race. You're relying on ethnic origins. That was never the case. This is an issue that has come into the case through the amicus and then the supplemental briefs. Correct? Yes. There's no allegation or suggestion. Even now, I think that Mr. Lerman made clear that there's no allegation that the district judge here impermissibly took into account race, ethnicity, or national origin. The only argument is that... I think the argument is that there's a risk that allowing for the community characteristics to be taken into account may in the future result in disparate impact. But that's something that courts can take into account in any given case considering potential disparate impact just like courts did in Kimbrough. And I would note also that in terms of this notion that there's a potential parade of horribles here that could result in permitting courts to take into account the characteristics of the community, multiple circuits have permitted district courts to take into account the characteristics of the community. The Second Circuit... Let me ask you about that. Is there any case... This is a question about that and then I just had a couple questions about the disposition from your point of view in this case. Is there any case in which the community characteristics have justified a variance when the crime was a possession offense? Well, the two cases were obviously where I did have to deal with drug trafficking, Your Honor. And as I understood it, in Caveira, the Second Circuit specifically relied in terms of their disposition on the fact that the trafficking needed to be deterred because of the particular circumstances there of the high price that the market would have created and so you need special deterrence. I thought on the particular question of whether the nature of the crime alone could be the basis for the upward variance based on community characteristics, there was no holding of the court. Isn't that right? I think that there was a linkage between the idea that it was a trafficking case and trafficking arms into New York, which is a community characteristic was a problem. Because there was a need for deterrence. That was the sole ground that they gave because of the market. I believe that. There wasn't a majority on the second ground, I thought. I think that's right, but I think that what the... Is there a case in any other circuit in which a possession offense has been just a variance upward has been justified based on a possession offense due to the high crime rate, high divided crime rate? I don't know. Well, obviously, the two firearm trafficking offenses were trafficking rather than mere possession. Is that a time? There is a Sixth Circuit case that deals with opioids and the prevalence of opioids in Ohio. Is that a trafficking? I don't know off the top of my head, Your Honor. But I think the relevant question is the linkage. I understand. I just wanted to clarify that. On the disposition to the case, I just wanted to get clarity on a few points from your point of view. If Rivera-Barrios remained good law, is the government's position that the sentence must be reversed? If Rivera-Barrios remains good law, then because the district court did not identify a... Well, certainly, if the panel's reading of Rivera-Barrios is good law, then I think that what happens is the court has to identify some sort of case-specific nexus between the community characteristics and something unique to the individual defendant here. I suppose on remand, the court should be permitted to do that on remand. That's what I'm asking. Your view is that even if Rivera-Barrios is good law, the right result should be to remand since they would have a chance to make that case-linked analysis? Yes. But I also think that that case-linked analysis is entirely inconsistent with the... No, I understand. I understand that. I'm just trying to figure out on the disposition. And then, secondly, I take it by saying that there needs to be that remand. That kind of case-linked explanation, you agree, was not made here. I think it's fair to say that the court did not, in its analysis, make any kind of case-specific nexus linkage here. Okay, so to the extent that that is still permissible under Rivera-Barrios, your suggestion would be that we would vacate remand unless we overturned Rivera-Barrios. That's correct. And I would just make the point that this notion of a case-linkage requirement is inconsistent with Spears, which allows district courts to categorically conclude that a 3553A factor warrants a deviation from the guideline without a specific particular nexus to defend it. So we just really emphasize that that kind of... And what it has resulted in are these panel decisions that look to whether there's something unique in this case that links it, whether there's too much ammunition and too much or not enough ammunition. And that is just directly inconsistent with the function of an appellate court in the sentencing scheme as it now exists under Gall, Booker, and Kimbrough. Counsel, will you be suggesting... Doesn't the sentencing scheme want us to focus on the individual defendant and the individual crime? I'm not sure why there shouldn't be a focus on the individual defendant or at least the characteristics of the crime or the characteristics of the individual defendant. The sentencing scheme requires the court to look at the 3553A factors as applied in a particular case to a particular defendant. Some of those factors are absolutely geared toward unique aspects of what a defendant did or his or her background, whether it's her background or how she committed the actual offense. Others draw in categories of conduct that apply to this defendant and other defendants. So, for example, the fact that it's a dangerous machine gun, that doesn't apply to how this defendant committed the crime. That's clearly a relevant factor into how to evaluate the 3553A factors. That's presumably accounted for in the guidelines, what you just said. Under this court's reasoning, it presumably is, but I think that's a little circular, Your Honor, because I think what we're talking about are the 3553A factors and then how a court has to weigh those factors. Some apply to the specific defendant. Some apply to larger categories. Here, one of the 3553A factors applies to gun offenses within Puerto Rico because of the need for deterrence. Nothing in the statute, nothing in Supreme Court case law requires a court to give precedence over some factors versus other factors. To the contrary, it's been repeated over and over and over again that the district court is in the best position and has ample discretion to weigh the factors as they apply in every particular case in whatever way it feels is appropriate. Judge Halper, you had a final question? Yes. One final two-part question, quick. Counsel, if Rivera-Rodriguez remains the rule of the circuit, aren't we, in your position, we're going back to a point in time similar to when the guidelines were mandatory and then upwards departures, this court feels was sort of revealing the no-go. Would that be the government's position? Yes. It effectively treats the guidelines as mandatory and I think, or at a minimum, presumptively reasonable and that's, I think, reflected in the mandate in this case which is vacating and remanded with instructions to apply within guidelines range, a sentence within the guidelines range. That means the guidelines is mandatory and that is directly contrary. No, that just means that the government doesn't get a second bite at the apple. That's all that means. Well, Your Honor, I think what it means is that a district court, if it takes into account a factor that's already in the guidelines range plus another factor that's not accounted for, the prevalence of gun violence, can't give weight to that as it seems fit because, and therefore, the guidelines range is presumptively reasonable or mandatory. Gall and Ald and Kimbrough make clear that it's the district judge that has broad discretion, even in a mine run case. A district court can conclude that in a mine run case, it believes that the sentencing guidelines do not give adequate or ample weight to a particular factor under 3553A that's relevant and that the court is going to decide, I'm going to give more weight to that and I'm going to impose an outside the guidelines sentence. That's entirely permissible under Gall, under Kimbrough, and under, and that's in fact what happened in Kimbrough. Everyone recognized that in Kimbrough that was a mine run case, but the court was entitled to give different weight and to weigh the 3553A factors differently and impose a down variance on that case. My last part of my question was, would it be fair to assume, and you said, well, you really haven't found any of these cases in other circuits, but it wouldn't be fair to assume because in those states and those circuits, they're prosecuted at the state level. Here in Puerto Rico, every gun case is prosecuted at the federal level and that's why we get so many variances in so many gun cases. Would that be a fair statement? I mean, it would be a fair statement and I think it's also a fair statement that there's so many gun cases because there's so many gun crimes. I mean, one can, it's entitled to infer that these types of machine gun crimes, based on the rate at which they reach this court, is an indication of their commonality in Puerto Rico. There are no federal machine gun possession prosecutions in the United States other than Puerto Rico? No, that's not at all what I'm saying, Your Honor. I think it's what I'm saying that this court has repeatedly had to deal with these issues and I'm not aware of any other court of appeals addressing machine gun possession cases with any similar type of variances. Well, is that because what Jeff Shelby said in Puerto Rico, they all go federal and in states they go state so we don't deal with them at the federal level but in Puerto Rico we do so there seems like a high incidence because in Puerto Rico they all go federal. Well, there's a, my understanding, again, this is not in the record, there's a memorandum of understanding where because of the severity of these offenses in Puerto Rico and the real problem that there has been an agreement for the federal government to handle these cases. Thank you. Which I think goes to the district court's factual findings. Again, it's not in the record. Thank you. Thank you, your honors. I need to ask that the court affirm. Thank you. At this time would attorney Palatari please mute his audio and video. Attorney Lerman, please introduce yourself back on the record for a five minute rebuttal. This is Kevin Lerman back with you representing Liliana Flores-Gonzalez I would like to start by pointing out that the timing and this court's precedent, the timing of the court's pronouncement about the of its judgment and this court's precedent established that what the court was saying should not be construed as factual findings. Rule 32 doesn't permit factual findings in the way that the court read off its script after the time for submission of evidence was closed, after the pre-sentence report was written and objected to and after the parties made their presentation. And the precedent of this court, there was discussion about Narvaez Soto. Narvaez Soto doesn't take what the court said at face value. In fact, it was concerned that the statements in Narvaez Soto which were very similar script at sentencing as we see here, and this court said well, we acknowledge that the district court might have wasn't aware of the level of crimes outside of Puerto Rico but the important thing was that there are high crimes there. The court overlooked that because it was still obvious that there was an individualized treatment of the defendant in Narvaez Soto unlike here where there isn't any link whatsoever to the person who was being sentenced. The timing of the actual sentence, here we have page 31 of the appendix. The court says this is the judgment of this defendant.  defendant was sentenced but the defendant was entered. There's been discussion here by the DOJ that there was somehow a need for some other objection and calling these very ambiguous assertions about Puerto Rico and about the community. It doesn't require a     These cases are everywhere. They're playing on radio and newspapers. That's not a factual finding that would be reviewed in the same way as if it came under rule 32. Could you address the disposition question I ask that the government said that the case should be vacated and remanded so the district court could make the case linked assessment that I think the government conceded was not made here. Governments don't need to make that assessment. Assuming you do, the government's view is that the case should be vacated and remanded so the district court could have a chance to do that if it wanted to make a case based on the shell casing and the like. What's your view of that? I don't think that the court's president or rule 32 contemplates going back and expanding the record. If it has to be done, this court is not going to expand the record. Those things that are now in the record on remand pointing to them and making an explanation as to how in light of those factors, driving around, going through the drive-thru, spent shell casing, the prior conduct that Judge Lynch referred to, all of that. If the district court did not rely on those features and instead relied only on community characteristics the government seemed to accept, the government was of the view that it should have a chance to make that case-length assessment on the record as it now stands. What's your view of that? It would have to issue it within guidelines. There's one or two ways to go about it. I think if we look at after the court reaches the determination that the basis for the variance wasn't justified, the court looked at the remainder of the record and said we don't see any basis here for a variance, so we're not remanding for more hearing, we're just remanding for a sentence within the guideline range. I think that would be appropriate here for practical reasons because Emiliano Flores has already returned home in Maryland. As an adult he was only living in Puerto Rico for three months and we think practically speaking to hasten the resolution of this case so that he can get on with his life, I think that would be appropriate. I would say if I can finish my thought, I would say that a remand to have an individualized sentence because I think that that could result, I think the case should be remanded to another judge and if it could be individualized because I think that would be appropriate. I would say that the   have an      result, I think the case should be remanded to another judge and if it could be individualized because I think that that could result, I think the case should be remanded to another judge and it could be individualized because I think the case should be remanded  judge and  be individualized because I think the case should be remanded to another judge and if it could be individualized because I think the case should be remanded to another judge and if it could  individualized the       be individualized because I think the case should be remanded to another judge and it could be individualized because I have never   like this before. In terms of community characteristics and the usual case, it's like judge Howard said in his concerns. Guidelines are data-driven and experience-based manifestations of Congress's views on how in the usual case sentencing will be accomplished. There are cases where when the facts don't warrant it and they can't be explained in a specific way to justify a variance, the guidelines have more strength. If the sentence is based on individualized characteristics, then the court will be at its peak of institutional strength. When it comes to the generic statements. In other words, I have  since 2014-13 all the cases involving variances, whether this court has demanded or affirmed. There's a greater number affirming. Those cases have still gotten long. The current case would be cases where the judge did not explain as much as he should have. Am I correct in that respect? Generally. I think there's a difference when the sentence is based on something specific to the defendant. Your Honor's decision in Garcia was based on the firearm. The reference to something in the community is not so far-fetched. When it comes to a wholly nonviolent crime of a simple possession, it's a different category of offense. This would be a narrow categorical focus. The basis already stated in the case is that the defendant should not be subject to any specific factors. The defendant should not be subject to any specific factors. The defendant should not be subject to any unconditional or undue focus to some factors that doesn't have to do with the person  being sentenced. Thank you. That concludes arguments for today. This session of the Honorable United States Court of Appeals will disconnect from the hearing.